[Cite as *Brannon v. Executive Properties, Inc.*, 2012-Ohio-5483.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| DEANNA BRANNON | | C.A. No. 26298 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| EXECUTIVE PROPERTIES, INC. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No. CV 2011 01 0585 |

DECISION AND JOURNAL ENTRY

Dated: November 28, 2012

---

CARR, Judge.

{¶1} Appellant Deanna Brannon appeals the judgment of the Summit County Court of Common Pleas that granted summary judgment in favor of appellee Executive Properties, Inc. This Court reverses and remands.

I.

{¶2} Ms. Brannon rented an apartment for approximately one year in a building owned by Executive Properties. After she moved out, Executive Properties failed to return her security deposit. Ms. Brannon filed a complaint for the return of the security deposit. Executive Properties filed an answer and counterclaim in which it alleged that Ms. Brannon breached the terms of the lease agreement by failing to pay certain utility charges. Executive Properties moved for summary judgment on both Ms. Brannon's complaint and its counterclaim. Ms. Brannon filed a brief in opposition and Executive Properties replied. The trial court granted summary judgment in favor of Executive Properties and entered judgment in its favor in the

amount of $570.50 on the counterclaim. Ms. Brannon appealed, raising one assignment of error for review.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRONEOUSLY GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEE AS JUSTICIABLE ISSUES DID EXIST UPON THE RECORD.

{¶3} Ms. Brannon argues that the trial court erred by granting summary judgment in favor of Executive Properties. This Court agrees.

{¶4} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶5} Pursuant to Civ.R. 56(C), summary judgment is proper if:

No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶6} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere

allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶7} The non-moving party's reciprocal burden does not arise until after the moving party has met its initial evidentiary burden. To do so, the moving party must set forth evidence of the limited types enumerated in Civ.R. 56(C), specifically, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]"

{¶8} Ms. Brannon entered into a lease agreement for a two-bedroom apartment, specifically apartment 710, in a ten-story apartment building located at 540 E. Portage Trail, in Cuyahoga Falls. Upon executing the lease, Ms. Brannon paid a $770 security deposit, plus an additional $50 garage deposit. When she vacated the premises, Executive Properties deducted $75 for carpet cleaning and $1315.50 for unpaid gas utility bills, leaving a deficit of $570.50. Both parties alleged claims for breach of contract. Ms. Brannon alleged that Executive Properties breached the lease agreement by refusing to return her security deposit for improper reasons. Executive Properties alleged that Ms. Brannon breached the lease agreement by failing to pay certain utility bills as required under the lease. The bills at issue concerned solely those from Dominion East Ohio for the provision of gas to the apartment building. Both claims arise out of the construction of a utilities addendum to the lease. For purposes of summary judgment, Executive Properties argued that the language of the addendum was clear and unambiguous because it stated that the resident's share of utilities would be based on the square footage of the resident's unit. On the other hand, Ms. Brannon argued that the addendum was ambiguous due

to indefiniteness regarding the allocation formula, thereby requiring consideration of parol evidence to determine the parties' intent and the reasonableness of the agreement.

{¶9} "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984), citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978). "However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." *Inland Refuse* at 322, citing *Hallet & Davis Piano Co. v. Starr Piano Co.*, 85 Ohio St. 196 (1911). Even within the context of the determination of a motion for summary judgment, "where a written contract is ambiguous, it is appropriate to look to contemporaneous discussions of the parties in order to interpret the agreement." *Schleicher v. Alliance Corporate Resources, Inc.*, 10th Dist. Nos. 95APE03-311, 95APE03-312, 1995 WL 723555 (Dec. 7, 1995). In addition, the court may consider parol evidence in interpreting the parties' agreement. *Id.* (concluding that "once it is determined that a clause is ambiguous, parol evidence can be introduced to explain the intention of the parties and to explain what was meant by [a certain provision].").

{¶10} Ms. Brannon signed a lease agreement that included a utilities provision that stated that the costs of water, sewer, and trash were included in the monthly rental, while she would be responsible for transferring the electricity into her name and paying the electric company directly. She further signed a utilities addendum that stated that she agreed "to the billing described below" for "Gas" and "HVAC." The addendum provided that such utilities would be billed as follows:

> Each Utility Bill shall be based on the most current actual bill for the Utilities for
> the Property allocated to Resident pursuant to an allocation formula based, in

whole or in part, upon at least one or more of the following components: ___ the number of Units at the Property, ___ the number of occupied Units at the Property, _X_ the square footage of the Unit, ___ the number of occupants in the Unit, ___ and the number of fixtures in the Unit.

\* \* \*

Resident understands that no representation or warranty by Lessor regarding estimated or actual Utility Bills shall be enforceable unless it is set forth in writing signed by Lessor.

{¶11} On its face, the addendum purported to transfer some financial obligation to tenants for two separate utilities, although the only separately billed utility was gas as provided by Dominion East Ohio. Executive Properties used an outside company, American Utility Management ("AUM"), to calculate and bill each tenant's proportionate share of the monthly bill.

{¶12} The addendum's billing provision was ambiguous because it did not clearly enunciate a formula to enable a tenant to know precisely how her financial obligation for gas would be determined. While the addendum indicated that the square footage of a tenant's apartment was relevant to the allocation of her financial responsibility, it did not clarify what other factors might be implicated. The square footage of one tenant's apartment was only meaningful as it related to the square footage of the whole property included in the sole monthly gas bill. The addendum did not clarify what constituted the whole area serviced by Dominion in relation to the bill for the property, e.g., whether common areas and/or administrative offices were included; whether Executive Properties would absorb any financial responsibility for paying any portion of the gas bill; and how unoccupied apartments would factor into the equation. Absent any provision that provided context for the meaning of "the square footage of the Unit" as that related to the total area serviced by Dominion as reflected in the utility bill, the

allocation of financial responsibility in the utilities addendum was inherently ambiguous. Accordingly, parol evidence was admissible to cure the ambiguity.

{¶13} In addition to copies of the lease agreement and utilities addendum, Executive Properties appended the following evidence to its motion for summary judgment: a transcript of Ms. Brannon's deposition testimony, and deposition exhibits; the affidavit of Robert Bozsik, general manager of Executive Properties, and various documents authenticated thereby; and the affidavit of Jeffrey Peterson, vice president and general counsel for AUM, and various documents authenticated thereby.

{¶14} Ms. Brannon testified during her deposition that the property manager told her that gas bills averaged $30 per month for most tenants. She further testified that she did not understand the utilities addendum and believed that her financial obligation would correspond with her own use of gas.

{¶15} Mr. Bozsik authenticated Dominion East Ohio billing statements for 540 E. Portage Trail for gas used during the period of March 6, 2008, until March 6, 2009. Ms. Brannon did not begin leasing her apartment until May 1, 2008. The gas bill for the period of March 6, 2008, until April 3, 2008, showed a prior balance of $13,963.92 and current charges of $9,569.88, leaving an account balance of $23,533.80. The bill for the period of April 3, 2008, until May 6, 2008, during which Ms. Brannon would have resided in the apartment for six days, showed a prior balance of $9,569.88 and current charges of $5,524.95, leaving an account balance of $15,094.83. The bills continued to carry a prior balance in addition to the current charges until Executive Properties became current on the account on June 27, 2008. Mr. Peterson authenticated an account ledger report evidencing gas charges assessed to Ms. Brannon by AUM beginning with the May 2008 statement of charges. Neither Mr. Bozsik nor Mr.

Peterson explained how prior gas charges pending at the time Ms. Brannon began living in the apartment were taken into consideration when AUM assessed utility charges against her.

{¶16} With a $0.00 prior balance, a current charge of $1,042.17 was assessed by Dominion against 540 E. Portage Trail for the period of June 3, 2008, until July 3, 2008, based on the only estimated usage reading in the record. The following month, Dominion assessed current charges of $51,992.53 against the property. During the remaining months in which Ms. Brannon resided at the apartment, the current gas charges were as follows: $25,833.43, $11,601.30, $4,825.55, $11,020.28, $17,519.92, and $10,160.37. With one exception when the usage was estimated, gas usage was determined based on either "remote" or "customer" meter readings.

{¶17} Executive Properties asserted that the reason for the significant gas charge during the period of July 3, 2008, until August 1, 2008, was not relevant to the issues before the trial court. However, the copy of the gas bill for that period included a typed plea sent electronically with the gas bill to an unknown recipient in which Executive Properties implored, "Please help us get a new meter. We are using too much gas. * * * Please give me a number to call for assistance regarding the meter." Accordingly, Executive Properties presented evidence in connection with its motion for summary judgment regarding its recognition that its gas bills were unreasonable. Moreover, (1) gas bills appended to the motion for summary judgment, and (2) a letter, admitted into evidence by Executive Properties during Ms. Brannon's deposition from AUM to apartment residents, both indicate that the utility company did not always obtain "actual meter readings." The calculation of tenants' monthly gas bills could not, therefore, be based on current "actual bills" as set forth in the addendum's calculation formula, further rendering the formula imprecise and ambiguous.

{¶18}  One of the most significant pieces of evidence appended to Executive Properties' motion for summary judgment was a letter from Mr. Peterson to Ms. Brannon's prior attorney in which Mr. Peterson explained the billing methodology used to determine each tenant's financial obligation for the gas bill.  The AUM billing allocation document explained that the property absorbs "some percentage" of the utility costs for common areas, and that that cost is subtracted from the total bill before each tenant's proportionate share is determined.  For purposes of an example only, AUM used ten percent as the property's share of utility costs, although there was no justification for that particular assumption.  The document further explained that each tenant's share was based on her unit's percentage of the square footage of all units, except that less weight was given to vacant units.  The billing allocation document did not explain the extent to which the costs associated with gas use in vacant units would be diminished or how such costs would be reallocated.  Specifically, it did not clarify whether Executive Properties would absorb those costs or whether they would be distributed among the rented units.

{¶19}  In further support of its motion for summary judgment, Executive Properties presented an undated letter from AUM to "Portage Trail East resident" in which it sought to explain recent "seemingly high gas charges" arising out of the $51,992.53 July gas bill, as well as the calculation method used to assess proportionate shares to tenants.  In this letter, AUM asserted that Executive Properties absorbs 20 percent of the costs billed for gas.  It then asserted that, to "ease the burden for Portage Trail East residents," Executive Properties would be absorbing an additional 16 percent of the July bill ($8,614.53) and spreading the balance ($43,378) over billing periods for July, August, and October 2008, skipping the September billing cycle "as the actual gas charges for that period were already fairly high[.]"  Although the letter further asserted that a "calculation detail report for the October bill period, showing how

the actual amount of your bill was determined" was attached, no such document exists in the record. This Court concludes that this letter provided additional evidence that the "formula" in the addendum was indefinite and malleable, rather than clear, definitive, and unambiguous, given Executive Properties' apparent ability to modify, through its agent AUM, utility charges assessed to tenants. Moreover, we conclude that this evidence gave rise to a genuine question of material fact regarding the reasonableness of the terms in the addendum because tenants could never be sure of their respective proportionate share of utility costs.

{¶20} Viewing the evidence most strongly in favor of Ms. Brannon as the non-moving party, this Court concludes that Executive Properties failed to meet its initial burden pursuant to *Dresher* to show that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. Accordingly, the trial court erred by granting summary judgment in favor of Executive Properties on both Ms. Brannon's complaint and its counterclaim. Ms. Brannon's assignment of error is sustained.

III.

{¶21} The sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

BRIAN J. WILLIAMS, Attorney at Law, for Appellant.

JAMES WAGNER, Attorney at Law, for Appellee.